**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
       pkim@rosenlegal.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT KLESZYNSKI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS COMPANY, DANIEL F. AKERSON, MARY T. BARRA, DANIEL AMMANN, and CHARLES K. STEVENS III,<br><br>Defendants. | Case No. 17-cv-3213<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Kleszynski ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding General Motors Company ("GM" or the "Company"), analysts' reports and advisories about the Company, and

1

information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of GM from February 27, 2012 through May 25, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant GM designs, builds, and sells cars, trucks, crossovers, and automobile parts worldwide. The Company is incorporated in Delaware and its principal executive offices are located at 300 Renaissance Center, Detroit, Michigan. The Company sells its vehicles in multiple locations throughout New York. The Company's securities are traded on New York Stock Exchange ("NYSE") under the ticker symbol "GM."

8. Defendant Daniel F. Akerson ("Akerson") was the Company's Chief Executive Officer ("CEO") from September 2010 and the Company's Chairman from January 2011 until his resignation on January 15, 2014.

9. Defendant Mary T. Barra ("Barra") has been the Company's CEO since January 15, 2014.

10. Defendant Daniel Ammann ("Ammann") was the Company's Chief Financial Officer ("CFO") from April 2011 until January 15, 2014 and has been the Company's President since January 15, 2014.

11. Defendant Charles K. Stevens III ("Stevens") has been the Company's CFO since January 15, 2014.

12. Defendants Akerson, Barra, Ammann, and Stevens are sometimes referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b)  was directly involved in the day-to-day operations of the Company at the highest levels;

(c)  was privy to confidential proprietary information concerning the Company and its business and operations;

(d)  was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)  approved or ratified these statements in violation of the federal securities laws.

14. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

17. On February 27, 2012, the Company filed a Form 10-K for the fiscal year ended December 31, 2011 (the "2011 10-K") with the SEC, which provided the Company's year-end financial results and position. The 2011 10-K was signed by Defendants Akerson and Ammann. The 2011 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002

("SOX") by Defendants Akerson and Ammann attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

18. The 2011 10-K stated the following with regards to its compliance with emission requirements:

> The federal government imposes stringent emission control requirements on vehicles sold in the U.S. and additional requirements are imposed by various state governments. These requirements include pre-production testing of vehicles, testing of vehicles after assembly, the imposition of emission defect and performance warranties and the obligation to recall and repair vehicles that do not comply with emissions requirements. We must obtain certification that the vehicles will meet emission requirements from the United States Environmental Protection Agency (EPA) before we can sell vehicles in the U.S. and Canada and from the California Air Resources Board (CARB) before we can sell vehicles in California and other states that have adopted the California emissions requirements.
>
> We believe that our vehicles meet the current EPA and CARB requirements. If our vehicles do not comply with the emission standards or if defective emission control systems or components are discovered in such testing, or as part of government required defect reporting, we could incur substantial costs related to emissions recalls and possible fines. We expect that new CARB and federal requirements will increase the time and mileage periods over which manufacturers are responsible for a vehicle's emission performance.

19. On February 15, 2013, the Company filed a Form 10-K for the fiscal year ended December 31, 2012 (the "2012 10-K") with the SEC, which provided the Company's year-end financial results and position. The 2012 10-K was signed by Defendants Akerson and Ammann. The 2012 10-K also contained signed SOX certifications by Defendants Akerson and Ammann attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

20. The 2012 10-K stated the following with regards to its compliance with emission requirements:

> The federal government imposes stringent emission control requirements on vehicles sold in the U.S. and additional requirements are imposed by various state governments. These requirements include pre-production testing of vehicles, testing of vehicles after assembly, the imposition of emission defect and performance warranties and the obligation to recall and repair vehicles that do not comply with emissions requirements. We must obtain certification that the vehicles will meet emission requirements from the United States Environmental Protection Agency (EPA) before we can sell vehicles in the U.S. and Canada and from the California Air Resources Board (CARB) before we can sell vehicles in California and other states that have adopted the California emissions requirements.
>
> We believe that our vehicles meet the current EPA and CARB requirements. If our vehicles do not comply with the emission standards or if defective emission control systems or components are discovered in such testing, or as part of government required defect reporting, we could incur substantial costs related to emissions recalls and possible fines. We expect that new CARB and federal requirements will increase the time and mileage periods over which manufacturers are responsible for a vehicle's emission performance.

21. On February 6, 2014, the Company filed a Form 10-K for the fiscal year ended December 31, 2013 (the "2013 10-K") with the SEC, which provided the Company's year-end financial results and position. The 2013 10-K was signed by Defendants Barra and Stevens. The 2013 10-K also contained signed SOX certifications by Defendants Barra and Stevens attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

22. The 2013 10-K stated the following with regards to its compliance with emission requirements:

> The U.S. federal government imposes stringent emission control requirements on vehicles sold in the U.S. and additional requirements are imposed by various state governments. Canada's federal government is aligned with the U.S. federal requirements. These requirements include vehicle exhaust emission standards, vehicle evaporative emission standards and OBD system requirements. Each model year we must obtain certification for each test group that our vehicles will meet emission requirements from the U.S. Environmental Protection Agency (EPA) before we can sell vehicles in the U.S. and Canada and from the California Air Resources Board (CARB) before we can sell vehicles in California and other states that have adopted the California emissions requirements. Fleet-wide

6

emissions compliance must also be achieved based on a sales-weighted fleet average.

While we believe all our products are currently in compliance with EPA and CARB regulatory requirements, both agencies have ongoing "in-use" evaluations of compliance for products from all manufacturers. It is possible that we or either agency could identify potential non-compliance, which could lead to some type of field action to remedy the issue. Testing is conducted at various times. This includes pre-production testing of vehicles as part of certification and in-use testing of customer vehicles at specified mileages.

23. On February 4, 2015, the Company filed a Form 10-K for the fiscal year ended December 31, 2014 (the "2014 10-K") with the SEC, which provided the Company's year-end financial results and position. The 2014 10-K was signed by Defendants Barra and Stevens. The 2014 10-K also contained signed SOX certifications by Defendants Barra and Stevens attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

24. The 2014 10-K stated the following with regards to its compliance with emission requirements:

The U.S. federal government imposes stringent emission control requirements on vehicles sold in the U.S. and additional requirements are imposed by various state governments. Canada's federal government vehicle criteria emission requirements are generally aligned with the U.S. federal requirements. These requirements include vehicle exhaust emission standards, vehicle evaporative emission standards and OBD system requirements. Each model year we must obtain certification for each test group that our vehicles will meet emission requirements from the U.S. Environmental Protection Agency (EPA) before we can sell vehicles in the U.S. and Canada and from the California Air Resources Board (CARB) before we can sell vehicles in California and other states that have adopted the California emissions requirements.

While we believe all our products are in compliance with EPA and CARB certification requirements, both agencies have ongoing "in-use" evaluations of compliance for products from all manufacturers. It is possible that we or either agency could identify potential non-compliance, which could lead to some type of field action to remedy the issue. Testing includes pre-production testing of vehicles as part of certification and in-use testing of customer vehicles at specified mileages.

7

25. On February 3, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 (the "2015 10-K") with the SEC, which provided the Company's year-end financial results and position. The 2015 10-K was signed by Defendants Barra and Stevens. The 2015 10-K also contained signed SOX certifications by Defendants Barra and Stevens attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

26. The 2015 10-K stated the following with regards to its compliance with emission requirements:

> We are subject to laws and regulations that require us to control automotive emissions, including vehicle exhaust emission standards, vehicle evaporative emission standards and onboard diagnostic (OBD) system requirements. Advanced OBD systems are used to identify and diagnose problems with emission control systems. Problems detected by the OBD system and in-use compliance monitoring may increase warranty costs and the likelihood of recall. Emission and OBD requirements become more stringent each year as vehicles must meet lower emission standards and new diagnostics are required throughout the world without harmonization of global regulations. Zero emission vehicle (ZEV) requirements have been adopted by some U.S. states and there is the possibility that additional jurisdictions could adopt ZEV requirements in the future. While we believe all our products are designed and manufactured in material compliance with vehicle emissions requirements, regulatory authorities may conduct ongoing evaluations of the emissions compliance of products from all manufacturers. This includes vehicle emissions testing, including CO2 and nitrogen oxide emissions testing in Europe, and review of emission control strategies.

27. On February 7, 2017, the Company filed a Form 10-K for the fiscal year ended December 31, 2016 (the "2016 10-K") with the SEC, which provided the Company's year-end financial results and position. The 2016 10-K was signed by Defendants Barra and Stevens. The 2016 10-K also contained signed SOX certifications by Defendants Barra and Stevens attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

28. The 2016 10-K stated the following with regards to its compliance with emission requirements:

> *Automotive Emissions Control* We are subject to laws and regulations that require us to control automotive emissions, including vehicle exhaust emission standards, vehicle evaporative emission standards and onboard diagnostic (OBD) system requirements. Advanced OBD systems are used to identify and diagnose problems with emission control systems. Problems detected by the OBD system and in-use compliance monitoring may increase warranty costs and the likelihood of recall. Emission and OBD requirements become more stringent each year as vehicles must meet lower emission standards and new diagnostics are required throughout the world with very little harmonization of global regulations. Zero emission vehicle (ZEV) requirements have been adopted by some U.S. states as well as the Canadian Province of Quebec and there is the possibility that additional jurisdictions could adopt ZEV requirements in the future. While we believe all our products are designed and manufactured in material compliance with substantially all vehicle emissions requirements, regulatory authorities may conduct ongoing evaluations of the emissions compliance of products from all manufacturers. This includes vehicle emissions testing, including CO2 and nitrogen oxide emissions testing, and review of emission control strategies.

29. The statements referenced in ¶¶ 17-28 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company installed three distinct defeat devices in over 700,000 trucks with Duramax diesel engines from 2011 to 2016 to beat emissions tests in the U.S.; (2) in turn, these trucks emit up to five times the legal limit of nitrogen oxide pollutants; and (3) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

30. On May 25, 2017, *Bloomberg r*eported that the Company was accused of installing multiple defeat devices in two models of heavy-duty trucks with the Duramax diesel engine from 2011-2016 in a class-action lawsuit filed that day.

9

31. The lawsuit[1] alleges that the following GM models powered by Duramax engines are affected by the unlawful, unfair, deceptive, and otherwise defective emission controls utilized by GM: model year 2011-2016 GM Sierra 2500HD and 3500 HD trucks and GM Silverado 2500 HD and 3500 HD trucks.

32. According to the lawsuit, extensive testing of a 2013 Silverado 2500 diesel—a vehicle that is representative of the class of Duramax diesel engines present in both the Chevrolet Silverado and GMC Sierra model years 2011 to 2016—confirms the existence of three defeat devices: (1) the vehicles produce emissions above the certification tests at temperatures above the certification range (86ºF); (2) the vehicles produce higher emissions when temperatures are below the certification test range (68ºF); and (3) higher emissions occur after the vehicle has been run for 200-500 seconds of steady speed operation on average by a factor of 4.5 in all temperature windows. These defeat devises allow the vehicle to meet emissions standards in the test temperature range, while allowing two to five times the legal amount of nitrogen-oxide pollutants to be emitted at all other times.

33. On this news, shares of the Company fell $0.60 per share or over 1.8% from its previous closing price to close at $32.60 per share on May 25, 2017, damaging investors.

34. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

---

[1] Styled as *Fenner, et al. v. General Motors LLC*, Case No. 2:17-cv-11661 (E.D. Mich. May 25, 2017).

otherwise acquired the publically traded securities of GM during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities are traded in efficient markets;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded on the NYSE, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)     Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

42.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

48. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

49. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

50. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

51. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

52. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

53. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to

the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

56. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

57. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

58. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 27, 2017                                   Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
           lrosen@rosenlegal.com

Counsel for Plaintiff